# IN THE UNITED STATES DISTRICT COURT FOR

# THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| K LEIGH GUTIERREZ,<br><br>　　　Plaintiff,<br><br>v.<br><br>SUMMIT MOUNTAIN HOLDING GROUP; SUMMIT POWDER MOUNTAIN,<br><br>　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:17-cv-00049<br><br>Chief Judge Robert J. Shelby<br>Magistrate Judge Brooke C. Wells |
| SUMMIT MOUNTAIN HOLDING GROUP; SUMMIT POWDER MOUNTAIN,<br><br>　　　Counterclaimants,<br><br>v.<br><br>K LEIGH GUTIERREZ,<br><br>　　　Counterclaim-Defendant. | |

　　　After her employment was terminated, Plaintiff Kami Gutierrez brought this suit against her former employers, Defendants Summit Mountain Holding Group and Summit Powder Mountain (collectively, Summit Mountain). Gutierrez claims Summit Mountain is liable for unpaid wages and retaliation under the Federal Labor Standards Act; unjust enrichment, breach of contract, and wrongful termination under Utah common law; and for violations of the Utah Payment of Wages Act. Summit Mountain counterclaimed for conversion, fraudulent

concealment, and unjust enrichment.[1]  Before the court are Gutierrez and Summit Mountain's cross motions for summary judgment on Gutierrez's claims.[2]

## FACTUAL BACKGROUND

Summit Mountain hired Gutierrez as an at-will employee in late 2015.[3]  She initially worked as part of the events staff, but was soon promoted to captain of events.[4]  During her work in both positions, Sydney Osmun was Gutierrez's direct supervisor.[5]  Gutierrez clocked in for events, but claims she also spent time working "off the clock" and was not paid for that time.[6]  In late December 2015 or early January 2016, Gutierrez asked Osmun how to get paid for time she spent picking up a case of alcohol for an event.[7]  She asked, "How do I get paid for this?  Am I just expected to do this or what?"  Osmun responded, "Oh yeah, yeah, yeah."[8]

Between approximately January and April 2016, Gutierrez worked as a bartender at one of Summit Mountain's restaurants, the Powder Keg.[9]  In April, she was given a new position at the North Fork Table & Tavern as a bar manager.[10]  Gutierrez clocked in while working on site, but claims she worked additional time off the clock for which she was not paid.[11]

---

[1] Dkt. 11 at 17-18.
[2] Neither party moves on Summit Mountain's counterclaims.
[3] Dkt. 23 at 5; Dkt. 22 at 18.
[4] Dkt. 19-2, Gutierrez Dep. at 16:22-24, 19:16-20, 20:5-6.
[5] *Id.* at 17:7-8.
[6] *Id.* at 22:22-23.
[7] *Id.* at 23:10-24:24.
[8] *Id.*
[9] *Id.* at 26:18-24.
[10] *Id.* at 28:13-29:18.
[11] *Id.* at 31:18-32:1.

The North Fork closed in October 2016 and Summit Mountain began converting the building to a new events space known as "Bower Lodge." Gutierrez was asked to help with the transition and directed to track and report her hours to Emily Vanderhoof by email.[12]

After approximately a month and a half in that position, Gutierrez became part of the events crew again.[13] Summit Mountain hired Tanner Blonquist on December 12, 2016 to oversee the Bower Lodge transition and to supervise Gutierrez.[14] According to Summit Mountain, Blonquist was instructed to monitor Gutierrez's work to ensure she reported the correct number of hours.[15] Blonquist was told that Gutierrez had not reported to a direct supervisor during the transition;[16] however, Gutierrez understood Reid Tomassi, director of events, to be her supervisor.[17]

At the close of 2016, Gutierrez worked a New Year's Eve party at Bower Lodge. Prior to the event, Gutierrez noticed a name on the guest list because Gutierrez's husband had an anti-stalking injunction against this person.[18] Gutierrez informed Reid Tomassi of the situation. Tomassi told Gutierrez he would "take care of it."[19] Later that evening, one of the owners of Summit Mountain called Gutierrez and informed her that the enjoined person would not attend the event.[20]

---

[12] *Id.* at 39:1-13, 40:5-16.
[13] *Id.* at 42:17-24.
[14] Dkt. 19-3, Blonquist Decl. ¶¶ 3, 6-7.
[15] *Id.* at ¶ 17.
[16] *Id.* at ¶ 15.
[17] Gutierrez Dep. 42:25-43:4.
[18] *Id.* at 51:5-18.
[19] *Id.* at 52:20-54:3.
[20] *Id.* at 54:15-56:4.

3

On the evening of January 4, 2017, Tomassi called Gutierrez and thanked her for working the New Year's Eve event. Although the parties agree this phone call took place, they dispute the nature of the conversation. Summit Mountain claims Tomassi called Gutierrez as a colleague simply to thank her;[21] Gutierrez claims Tomassi also offered her a promotion, and that she responded by stating she would "need to be paid for the overtime that [she] was working."[22]

The next day, Vanderhoof approached Gutierrez and told her it would be her "last day with the company."[23] Summit Mountain contends Gutierrez's termination was the result of her "failure to be present on-site" and "perform[] her job duties up to expected standards," and her "combative and insubordinate attitude towards Blonquist."[24] According to Summit Mountain, the decision to terminate Gutierrez was made during a lunch meeting on January 4, when Blonquist recommended to the COO of Powder Mountain that she be terminated and advised him that Gutierrez had not shown up for work that day.[25]

Gutierrez initiated this action by filing her Complaint on April 6, 2017.[26]

---

[21] Tomassi Decl. ¶¶ 10-12.

[22] Gutierrez Dep. 44:18-45:22.

[23] *Id*. at 86:3-87:5.

[24] Dkt. 19 at ¶¶ 32-33, 37.

[25] Blonquist Decl. ¶¶ 42-47.

[26] Dkt. 3.

# ANALYSIS[27]

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[29] A fact is material if, under the governing substantive law, it could affect the outcome of the suit.[30] In evaluating the motions, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party."[31] The court considers the parties' cross-motions for summary judgment independently – "the denial of one does not require the grant of another."[32] The moving party's burden of production to succeed on a motion for summary judgment depends on whether that party bears the ultimate burden of persuasion at trial.[33]

---

[27] Also pending in this case is Defendant's Objection to New Evidence Presented in Plaintiff's Reply Memo. Dkt. 34. Defendants maintain Plaintiff's calculation of damages should be stricken from the record under Rule 37(c)(1) because it was not timely produced during discovery. The court declines to address Defendants' Objection at this time because whether the damages calculation is part of the record or not, it would have no impact on this ruling.

[28] Fed. R. Civ. P. 56(a).

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[30] *Id.*

[31] *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

[32] *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

[33] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

### I. FLSA Unpaid Wages

Gutierrez's first claim is for unpaid wages under the FLSA. She alleges she worked overtime hours "off the clock" for which she was not compensated. Gutierrez never reported the hours in question to Summit Mountain.[34]

To succeed on an FLSA unpaid wages claim, the employee bears the burden to prove she "performed work for which [s]he was not properly compensated."[35] If an employer's records are inaccurate or unreliable, the employee does not have to establish the number of hours with concrete certainty. Instead, the *Mt. Clemens* burden-shifting framework applies.[36] Under that framework, the employee can meet her burden by showing she "'in fact performed work for which [s]he was improperly compensated and . . . . [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"[37] The burden then shifts to the employer "to produce evidence of the precise amount of work performed or to

---

[34] In her deposition, Gutierrez also claimed she did not receive payment for some overtime hours that were reported to Summit Mountain. Dkt. 19-2 at 41:14-21. However, in both her Motion for Summary Judgment and her Opposition to Summit Mountain's Motion, Gutierrez clarifies that her FLSA unpaid wages claim is based on the hours she did not report. Dkt. 22 at 12 ("[Gutierrez] was not paid for all the time she worked but was discouraged from claiming because of Defendants' policy against paying off-the-clock and overtime hours . . . ."); Dkt. 23 at 20-21 ("Powder Mountain's Motion for Summary Judgment fails because there are genuine issues of material fact that prove that Gutierrez was not paid for overtime because of Powder Mountain's policy that prevented her from reporting all of her overtime and off-clock hours.").

[35] *Brown v. ScriptPro LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012) (citing *Baker v. Barnard Constr. Co.*, 146 F.3d 1214, 1220 (10th Cir. 1998)).

[36] *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687-88 (1946).

[37] *Baker*, 146 F.3d at 1220 (quoting *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85 (10th Cir. 1983)).

negate the reasonableness of the inference drawn from the employee's evidence."[38] If the employer fails to rebut the employee's evidence, the court may award approximate damages.[39]

The *Mt. Clemens* framework applies in this case, given Gutierrez's claim that she did not report off-the-clock overtime hours because Summit Mountain "discourage[d] and disallow[ed] overtime for fear of retaliation." But Gutierrez fails under this framework to present sufficient evidence to show the amount and extent of unpaid work as a matter of just and reasonable inference.[40]

The only evidence Gutierrez provides in support of her unpaid wages claim is her own testimony estimating she worked "between 55 to 60 hours per week" during several periods of her employment.[41] She testified in a deposition that she did not keep track of the time she worked off the clock[42] or make any written record of those hours.[43] When asked what tasks she performed off the clock, she testified:

> Multiple times I had to go over and unlock the building, help set up because employees weren't there on time, picking up the liquor order from Ogden, working

---

[38] *Id.* (quoting *Donovan*, 725 F.2d at 83).

[39] *Id.* (quoting *Donovan*, 725 F.2d at 83).

[40] Gutierrez appears to dispute that the *Mt. Clemens* framework applies, arguing "[t]he exception to *Brown*" – a case applying the *Mt. Clemens* standard, as discussed below – "is where the employer does something deliberate to discourage or prevent the employee from reporting the overtime for fear of being fired." Dkt. 22 at 13. According to Gutierrez, Summit Mountain "cannot benefit from its own wrong by promoting a policy that discourages and disallows overtime for fear of retaliation and then assert[] as a defense that the employee never reported the overtime." *Id.* This argument misses the purpose of the *Mt. Clemens* framework, which provides an alternate standard when an employer's records are not a reliable source of evidence. Gutierrez claims she did not report the hours in question because she was discouraged from doing so; that renders Summit Mountain's records unreliable and warrants application of the *Mt. Clemens* framework. Gutierrez provides no legal authority to support the existence of a third standard, separate from the traditional FLSA and *Mt. Clemens* frameworks.

[41] Gutierrez Dep. 31:21-32:1.

[42] *Id.* at 25:7-15.

[43] *Id.* at 101:1-102:6

7

on the scheduling at home on the computer, [and] responding to emails and phone calls.[44]

Gutierrez does not testify or provide other evidence regarding how long these tasks took or when or how often they were performed. She also maintains it would be "impossible" for her to list the work done on her computer and phone.[45]

Faced with similar evidence, other courts have concluded employees failed to satisfy their burden under the *Mt. Clemens* framework. For example, in *Brown v. ScriptPro, LLC*, the Tenth Circuit affirmed summary judgment for an employer on a FLSA unpaid overtime claim.[46] The plaintiff estimated he had worked about 80 hours from home over a four-month period.[47] Although he provided uncontroverted evidence – his own and others' testimony – that he had "actually worked overtime," he had not recorded the hours on the employer's timekeeping system nor kept "any other record of any sort to document the hours worked."[48] The Court found the plaintiff failed to show the amount and extent of overtime by just and reasonable inference.[49]

---

[44] *Id.* at 33:6-13.

[45] *Id.* at 71:22-72:8.

[46] 700 F.3d 1222 (10th Cir. 2012).

[47] *Id.* at 1225.

[48] *Id.* at 1230.

[49] *Id.* *Accord Perez v. Pinon Mgmt. Inc.*, No. 12-cv-00653-RM-MEH, 2013 WL 9853508, at *14 (D. Colo. July 1, 2013), *report and recommendation adopted in part*, No. 12-cv-00653-RM-MEH, 2014 WL 5596261 (D. Colo. Nov. 4, 2014) (noting other courts "grant[ed] summary judgment [to employers] where plaintiffs have presented only vague language that they 'often worked more than 40 hours' or worked over 40 hours 'pretty much every week'").

In contrast, employees in other cases have met their burden by supplementing their testimony with other evidence, such as personal records of the hours worked.[50] Even absent written documentation as corroboration, an employee's testimony can be sufficient evidence if it connects the estimation of unpaid time to specific and time-limited tasks, allowing the court to reasonably approximate the total amount of unpaid time.[51]

Gutierrez's testimony that she worked "between 55 to 60 hours" per week, without any evidence to corroborate that estimate or connect it to specific tasks, is insufficient to show the "amount and extent of [unpaid] work as a matter of just and reasonable inference." Gutierrez therefore fails to meet her burden as a matter of law, and her Motion for Summary Judgment on this claim is denied. And because Gutierrez fails to present evidence to establish an element of her claim, summary judgment is granted for Summit Mountain.[52]

## II.  FLSA Retaliation

Gutierrez also sues for retaliation under the FLSA. Section 215(a)(3) of the FLSA makes it unlawful for an employer to "discharge or in any other manner discriminate against any

---

[50] *See, e.g.*, *Mitchell v. Caldwell*, 249 F.2d 10, 11-12 (10th Cir. 1957) (finding plaintiff's "daily record of hours worked . . . furnished a basis for ascertaining by mathematical calculation the average amount of overtime worked per week"); *Bowe v. SMC Elec. Products, Inc.*, 916 F. Supp. 1066, 1073 (D. Colo. 1996) (finding plaintiff's testimony combined with records he kept on a calendar and day timer were sufficient to create a just and reasonable inference).

[51] For example, in *Jimenez v. Bd of Cty. Commissioners of Hidalgo Cty.*, the plaintiff testified she was required to attend a five to ten-minute briefing before each shift. 697 F. App's 597, 599 (10th Cir. 2017). Her testimony provided sufficient evidence to find, as a matter of just and reasonable inference, that "at least five minutes a day was required of her pre-shift." *Id*.

[52] *See In re Ribozyme Pharma*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002) ("If the party who files the Rule 56 motion does not have the burden of proof at trial, it must point to an absence of evidence in the record to support the elements of the claim or defense which the other party is obligated to prove. . . . If the respondent fails to present competent evidence to establish every element of its claim or defense, entry of summary judgment in favor of the movant is appropriate because the respondent cannot carry its burden of proof.").

employee because such employee has filed any compliant or instituted or caused to be instituted any proceeding under or related to [the FLSA] . . . ."[53] Courts apply the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp v. Green* to retaliation claims.[54] Under this standard,

> a plaintiff must first establish a prima facie case of retaliation. The burden then shifts to the employer to offer a legitimate reason for the plaintiff's termination. Once the employer offers such a reason, the burden then shifts back to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual.[55]

Applying this framework to the pending motions, the court concludes Gutierrez is not entitled to summary judgment because there are questions of material fact preventing her from establishing a prima facie case as a matter of law. As for Summit Mountain, it is entitled to summary judgment because even if Gutierrez could establish her prima facie case, she cannot show Summit Mountain's proffered reasons for her termination are pretext for retaliation.

A. <u>Gutierrez's Motion for Summary Judgment</u>

To establish a prima facie case of retaliation, a plaintiff must show "(1) [she] engaged in activity protected by the FLSA; (2) [she] suffered an adverse action by the employer, subsequent to or contemporaneous with such activity; and (3) a causal connection existed between the [protected] activity and . . . adverse action."[56]

---

[53] 29 U.S.C. § 215(a)(3).

[54] 411 U.S. 792 (1973). *See also Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (noting the *McDonnell Douglas* framework applies to FLSA retaliation claims).

[55] *Conner*, 121 F.3d at 1394.

[56] *Hugler v. Foresclosure Connection, Inc.*, No. 2:15-cv-00653-DAK, 2017 U.S. Dist. LEXIS 81606, at *48 (D. Utah May 8, 2017) (citing *Conner*, 121 F.3d at 1394).

There is no dispute here that Gutierrez suffered an adverse action when her employment was terminated on January 5, 2017. Gutierrez claims she was terminated in retaliation for bringing up overtime pay in two conversations she had with different supervisors during her employment. The first conversation was with Sydney Osmun in late 2015 or early 2016; the second was with Reid Tomassi the night before Gutierrez was terminated.

The conversation with Osmun cannot serve as the basis for Gutierrez's retaliation claim, however, because it is not casually related to her termination. An employee can demonstrate a causal connection with circumstantial evidence of retaliation, including temporal proximity between a protected activity and the adverse action.[57] But unless there is "very close temporal proximity," additional evidence of causation is required.[58] A period of three months or more between a protected activity and adverse action is generally insufficient by itself to establish causation.[59] Gutierrez claims she spoke to Osmun about overtime approximately one year before she was terminated; without more, this loose temporal proximity falls far short of the evidence necessary to establish a causal connection between the two events.

As for Gutierrez's conversation with Tomassi, it took place the night before her termination. However, there remain questions of fact as to whether the conversation constituted a protected activity. Section 215(a)(3) of the FLSA protects employees against retaliation for,

---

[57] *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1247, 1253 (10th Cir. 2001).

[58] *Id.*

[59] *Id.* ("We have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.") (internal quotation omitted). *See also May v. Cockman*, No. 13-1021, 2016 U.S. Dist. LEXIS 191992, at *11 (D.N.M. Jan. 28, 2016) (suggesting "the Tenth Circuit has drawn a *de facto* bright line that a period shorter than three months . . . is sufficient by itself to establish causation for a *prima facie* case, while a period longer than three months is too attenuated without additional evidence.").

among other things, the "unofficial assertion of rights through complaints at work."[60] To constitute a protected activity, however, a complaint must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute."[61] In other words, it must be capable of putting the employer "on notice" of a potential FLSA claim.[62]

The parties dispute Tomassi's relationship to Gutierrez and the nature of their January 4 conversation. Gutierrez testified in her deposition that Tomassi was her supervisor. She says Tomassi called her to thank her for her work at the New Year's event and to offer her a promotion to "event manager." Gutierrez claims she responded that she would "love to do that" but would need to be "paid for the overtime that [she] was working."[63] Summit Mountain, on the other hand, claims Tomassi was never Gutierrez's supervisor and that he lacked authority to promote her or discuss her wages. As support for this position, they submit a declaration from Tomassi. According to Tomassi, he called Gutierrez "because [they] were colleagues who were friendly;" he states he did not offer Gutierrez a promotion or discuss wages or overtime with her.

Given this record, there are genuine disputes regarding whether Tomassi was Gutierrez's supervisor and whether he offered her a promotion. The disputes are material; if Tomassi was not Gutierrez's supervisor, then the conversation could not have put Summit Mountain "on notice" and could not constitute a protected activity.[64] There is also a material dispute regarding

---

[60] *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996) (quoting *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984)).

[61] *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

[62] *Id.*

[63] Gutierrez Depo. 44:18-22.

[64] *Accord McKenzie*, 94 F.3d at 1486 ("Thus, it is the assertion of statutory rights (*i.e.,* the *advocacy* of rights) by taking some action adverse to the company—whether via formal complaint, providing

whether Gutierrez clearly asserted FLSA-protected rights by asking to be paid for time she was working off the clock. These disputes present questions of fact that preclude summary judgment for Gutierrez.[65]

B. <u>Summit Mountain's Motion for Summary Judgment</u>

Even if Gutierrez succeeded in making a prima facie showing, she cannot meet her ultimate burden to show Summit Mountain's proffered reason for her termination is pretextual. If an employee makes a prima facie case of retaliation, the employer must then offer a legitimate, non-retaliatory reason for the termination. At that point, the burden shifts back to the employee to show "a genuine issue of material fact as to whether the employer's proffered reason for the challenged action is pretextual."[66] At this third stage, "the presumption of discrimination . . . drops from the case and the factual inquiry proceeds to a new level of specificity."[67]

Here, Summit Mountain has submitted evidence that Gutierrez was terminated due to absences, inadequate performance, and a "combative" attitude. Blonquist avers he observed Gutierrez coming to work late and leaving early.[68] Summit Mountain provides Blonquist's handwritten record of Gutierrez's time on-site, which he kept between December 26, 2016 and January 5, 2017 – it indicates she was on site a total of 31 hours during that time.[69] Blonquist

---

testimony in an FLSA proceeding, complaining to superiors about inadequate pay, or otherwise—that is the hallmark of protected activity under § 215(a)(3).").

[65] Summit Mountain also maintains that the decision to terminate Gutierrez was made earlier during the day on January 4, 2018, before Tomassi called Gutierrez. They argue the Tomassi conversation could not have impacted the termination decision, given this timing.

[66] *Conner*, 121 F.3d at 1394.

[67] *Id.* at 1396. *See also Bertsch*, 69 F. Supp. 3d at 1263 ("the ultimate burdens of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)).

[68] Blonquist Decl. ¶¶ 28-32.

[69] Dkt. 19-4.

13

states that Gutierrez was combative and insubordinate toward him and toward another employee in an event captain position.[70]

The burden therefore shifts back to Gutierrez to show, by a preponderance of the evidence, that Summit Mountain's articulated reasons are pretext for retaliation. An employee can show pretext by pointing out "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's . . . reasons for its action."[71] To survive summary judgment, Gutierrez must "produce evidence from which a reasonable jury could believe that the defendant's proffered reason is a false one."[72]

This she fails to do. Gutierrez relies on her "sterling work history," her previous promotions, and the timing of her firing in relation to the Tomassi conversation to establish pretext. However, she provides no evidence to support her "sterling work history." Although the record shows Gutierrez was promoted soon after she was hired and again around April 2016, those facts are not inconsistent with Summit Mountain's proffered reasons, all of which stem from Blonquist's interaction with and observance of Gutierrez starting in December 2016.

Gutierrez thus relies solely on the temporal proximity between her conversation with Tomassi and her termination. While this piece of circumstantial evidence raised an issue of fact at the prima facie stage, it cannot do the same at this stage; "close temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment."[73] Gutierrez

---

[70] Blonquist Decl. at ¶¶ 33, 39-41.

[71] *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997))

[72] *Conner*, 121 F.3d at 1396.

[73] *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004).

therefore fails to raise a question of fact and Summit Mountain's Motion for Summary Judgment is granted.

### III. Unjust Enrichment

Gutierrez brings a claim for unjust enrichment, arguing Summit Mountain benefitted from unpaid, off-the-clock hours she worked during her employment.

As Summit Mountain correctly points out, this claim is preempted by the FLSA. "'[W]here a state common law claim is based upon the same facts as a FLSA cause of action, the duplicative state-law claim is preempted by the FLSA and must be dismissed.'"[74] Gutierrez's unjust enrichment claim depends on the same facts and circumstances underlying her FLSA unpaid wages claim and is therefore preempted as a matter of law.[75] Summit Mountain's Motion is granted on this claim and Gutierrez's Motion is denied.

### IV. Breach of Contract

It is undisputed that Gutierrez worked as an at-will employee and that the parties did not have a written employment agreement.[76] Gutierrez nevertheless asserts a breach of contract claim, arguing that the parties formed "some form of contract," such as an implied contract, which Summit Mountain breached.

Gutierrez bears the burden to show she and Summit Mountain "created an implied-in-fact contract, modifying [her] at-will status."[77] She fails to do so here, offering only the vague

---

[74] *Stephenson v. All Resort Coach Inc.*, 2:12-cv-1097 TS, 2013 WL 4519781, at *9 (D. Utah Aug. 26, 2013) (quoting *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 630 (E.D.N.Y. 2011)).

[75] *See id.* (dismissing the plaintiff's unjust enrichment and other state law claims at summary judgment because the same factual allegations supported the plaintiff's FLSA claim).

[76] Dkt. 23 at 5; Dkt. 22 at 18.

[77] *Tomlinson v. NCR Corp.*, 345 P.3d 523, 527 (Utah 2014).

15

suggestion that "if Powder Mountain's Employee Handbook says that employees will be fired only for certain misconduct . . . it can be required to live up to that promise – especially if the employee is at will."[78] She does not provide the Employee Handbook as an exhibit nor cite to any language from the Handbook which would manifest an intent by Powder Mountain to create a contract and alter Gutierrez's at-will status.[79]

Without proof of the existence of a contract, Gutierrez's breach of contract claim necessarily fails. Summary judgment is therefore denied to Gutierrez on this claim and granted to Summit Mountain.

### V. Utah Payment of Wages Act

Under the Utah Payment of Wages Act, a terminated employee's unpaid wages "become due immediately and the employer shall pay the wages to the employee within 24 hours of the time of separation."[80] If the employer fails to pay wages due within 24 hours, the UPWA provides for a penalty of up to sixty days wages.[81] The penalty accrues "at the same rate that the employee received at the time of separation."[82] An employee can recover this penalty in a civil action which must be commenced within 60 days of the "date of separation."[83]

---

[78] Dkt. 22 at 19.

[79] *Cf. Tomlinson*, 345 P.3d at 527 ("[T]he existence of an internal policy manual detailing procedures required before an employee could be terminated for cause may be sufficient to raise a factual question as to whether the presumption of at-will employment had been rebutted) (citing *Caldwell v. Ford, Bacon & Davis Utah, Inc.*, 777 P.2d 483, 485-86 (Utah 1989)).

[80] Utah Code Ann. § 34-28-5(1)(a).

[81] Utah Code Ann. § 34-28-5(1)(c)(i).

[82] *Id.*

[83] Utah Code Ann. § 34-28-5(1)(c)(ii).

16

In her Summary Judgment Motion, Gutierrez appears to abandon her UPWA claim. Save for the introduction, the Motion contains no argument or citation to the record in support of summary judgment on the UPWA claim. Gutierrez's Motion is therefore denied as to this claim.

Summit Mountain, on the other hand, argues in its Motion that it is entitled to summary judgment on Gutierrez's UPWA claim because (a) there is no private right of action for unpaid wages under the statute and (b) any claim for penalties is time-barred.[84] Gutierrez does not respond to either argument.

The court agrees with Summit Mountain on both points. Section 34-28-5 of the UPWA provides a private right of action to recover penalties under the statute, but not to recover unpaid wages. The scope of that provision – and whether it can be read to provide an *implied* right of action outside the penalty provision – has been the subject of some discussion in the case law. Several decisions from this district have constrained the right of action to one for penalties only.[85] This court finds those decisions persuasive, and their results bolstered by the Utah State Legislature's recent amendment to the UPWA. The amendment added language providing a private right of action for "actual damages" in certain circumstances.[86] Although the amendment went into effect after the events at issue in this case and therefore has no direct

---

[84] Unlike the unjust enrichment claim, Gutierrez's UPWA claim is not preempted by the FLSA. *See Smith v. Batchelor*, 832 P.2d 467, 472 (Utah 1992) ("[T]he FLSA does not preempt the UPWA. In withholding Smith's back wages and failing to pay him time and a half for overtime, Movie Buffs violated two separate laws: one state and one federal. It therefore must bear the consequences of each.").

[85] *See, e.g.*, *Sweat v. Batelle Memorial Inst.*, No. 2:07-CV-401 TS, 2008 WL 4526021, at *3 (D. Utah Oct. 1, 2008) ("The cases cited by Plaintiffs do not support Plaintiffs' assertion that the Utah Court has found a private right of action in the UPWA beyond recovery of the penalty."); *Self v. TPUSA, Inc.*, No. 2:08-cv-395, 2009 WL 273326, at *2 (D. Utah Feb. 4, 2009) (relying on *Sweat* in finding no implied private right of action under the UPWA to sue for unpaid wages).

[86] Utah Code Ann. § 34-28-9.5(3)(a) (2017 Ut. HB 238) (enacted March 17, 2017).

17

import in this case,[87] it indicates the legislature's understanding that such a right of action did not previously exist, implicitly or otherwise.

And insofar as Gutierrez seeks to recover a penalty under the statute, the claim is time-barred. Under § 34-28-5(c)(ii), an action to recover a penalty must be "commenced within 60 days from the date of separation." Gutierrez was terminated on January 5, 2017 and filed her complaint 92 days later, on April 6, 2017. Summit Mountain's Motion is therefore granted on the UPWA claim.

## VI. Wrongful Termination

Finally, Gutierrez's wrongful termination claim fails. To make out a prima facia case of wrongful discharge under Utah law, an employee must put forth evidence to show: "(i) that his employer terminated him; (ii) that a clear and substantial public policy existed; (iii) that the employee's conduct brought the policy into play; and (iv) that the discharge and the conduct bringing the policy into play are causally connected."[88] If the employee makes that showing, "the burden shifts to the employer to articulate a legitimate reason for discharging the employee."[89] "The burden then shifts back to the employee to prove that engaging in the protected conduct was a 'substantial factor' in the employer's motivation to terminate the employee."[90]

---

[87] The amendment went into effect May 9, 2017. Gutierrez's claim for unpaid wages arose on the date she was terminated, January 5, 2017. The amendment thus has no import in this case. *See Gressman v. Utah,* 2013 UT 63 ¶¶ 12-13 ("A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive. . . . Under our case law, the parties' substantive rights and liabilities are determined by the law in place at the time when a cause of action arises . . . .").

[88] *Nebeker v. Nat'l Auto Plaza*, 643 Fed. Appx. 817, 821 (10th Cir. 2016) (quoting *Ryan v. Dan's Food Stores*, 972 P.2d 395, 404 (Utah 1998)).

[89] *Id.*

[90] *Id.*

18

Gutierrez claims she was wrongfully terminated for (a) "requesting off-the-clock and overtime moneys owed" and for (b) "reporting" a stalking injunction against "a client of one of Powder Mountain's officers."[91]

To the extent Gutierrez's claim relies on her alleged request for "off-the-clock and overtime moneys," it is preempted by the FLSA. "Courts have recognized that where an adequate alternative remedy exists for the alleged violation of public policy, an action for wrongful termination based on that public policy will not lie because the alternative statutory remedy provides an adequate safeguard to the public policy."[92] The FLSA provides an adequate alternative to Gutierrez's wrongful termination claim.

The second basis Gutierrez asserts for the wrongful termination claim fails on its merits. When Gutierrez noticed one of the guests on the list for the New Year's event was the subject of an anti-stalking injunction issued to her husband, she raised the issue with Tomassi. One of the owners of Powder Mountain called Gutierrez later that night to tell her the person would not attend the event.

Gutierrez fails make out a prima facie case to show the injunction – or her raising of the issue – had anything to do with her termination. She argues she was "wrongfully terminated for reporting the stalking injunction against Shawn Carolan" with virtually no evidentiary support or citation to the record. Given this complete lack of evidence, Gutierrez cannot show that any public policy was "brought into play" or the existence of a causal connection to her termination.

---

[91] Dkt. 22 at 20.

[92] *Johnson v. Lone Wolf Wireline, Inc.*, No. 2:12-cv-1087, 2013 WL 1899920, at *2 (D. Utah May 7, 2013) (collecting cases).

19

Gutierrez's Motion as to this claim is therefore denied and Summit Mountain's Motion is granted.

**CONCLUSION**

Gutierrez's Motion for Summary Judgment[93] is DENIED and Summit Mountain's Motion for Summary Judgment[94] is GRANTED.

SO ORDERED this 9th day of November, 2018.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[93] Dkt. 22.
[94] Dkt. 19.